*Formatted for Electronic Distribution*                                                                                          *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

**In re:**

    **PETER JAMES WISELL, II,**                       **Chapter 7 Case**
        Debtor.                                               **# 04-11269**
_____

**AILEEN WISELL and**
**DOUGLAS WOLINSKY,**
**in his capacity as TRUSTEE**
**for the BANKRUPTCY ESTATE**
**of PETER JAMES WISELL, II**            **Adversary Proceeding**
        Plaintiffs,                                  **# 05-1044**
        v.

**PETER JAMES WISELL,**
        Defendant.

_____

*Appearances:*       Jennifer Emens-Butler, Esq.              Debra Leahy, Esq.
                          Obuchowski & Emens-Butler               Bethel, VT
                          Bethel, VT                                    Attorney for Defendant/Debtor
                          Attorney for Plaintiff Creditor

## MEMORANDUM OF DECISION
### BASED UPON TRIAL ON THE MERITS

Aileen Wisell, a creditor, and Douglas Wolinsky, in his capacity as chapter 7 trustee for the estate of Peter James Wisell, II (the "Trustee" and together with Ms. Wisell, the "Plaintiffs") commenced this adversary proceeding objecting to the bankruptcy discharge of Peter James Wisell, II (the "Debtor") based upon a number of allegations under §727[1] including, the Debtor's (i) knowing and fraudulent misrepresentation of his financial condition via an undervaluation of assets, (ii) failure to report expected income, and (iii) untrue representation that he was unemployed on the date he filed for bankruptcy relief. The Plaintiffs also contend that the Debtor's failure to disclose accurate information regarding his income and expenses deprived the United States Trustee of the opportunity to undertake a meaningful evaluation of the Debtor's situation under §707(b). After denying the Parties' cross motions for summary judgment, the Court considered testimony and accepted evidence on May 17, 2006. For the reasons set forth below, the Court finds that the Plaintiffs have met their burden of proof and denies the Debtor's discharge.

---

[1] Unless otherwise indicated, all statutory references herein are to the United States Bankruptcy Code in effect prior to the Effective Date of the Bankruptcy Abuse Prevention and Consumer Protection Act since this adversary proceeding was commenced prior to October 17, 2005.

## JURISDICTION

This proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. §1409(a).

## BACKGROUND

The Debtor filed a voluntary chapter 7 petition in this Court on September 16, 2004 (the "Petition Date"). To assist his counsel in the drafting of the necessary bankruptcy schedules, the Debtor prepared a meticulous spreadsheet itemizing his assets and household furnishings. The preparation of charts and documents that include many specific details is not foreign to the Debtor. As a civil engineer, the Debtor is sophisticated in the preparation of documents that must be thorough and accurate, and he routinely deals with detailed paperwork in the course of his job.

The Debtor's Schedule I states that the Debtor was "unemployed" as of the Petition Date. Where Schedule I instructs the Debtor to describe any increase or decrease of more than 10 percent in any of the above categories that the Debtor anticipates will occur within the year following the filing of the document, the Debtor's Schedule I states "*The Debtor is currently looking for employment.*" The Debtor testified that he learned one day before the Petition Date, on September 15, 2004, that he would be losing his job effective on September 17, 2004. The Debtor also learned on September 15, 2004, that he would receive a two week severance payment. The Debtor admitted at the hearing he was actually employed by Redstone Commercial Group, Inc. ("Redstone") as of the Petition Date, contrary to his certification on the Summary of Schedules. The Debtor never amended his schedules to reflect that he was employed as of the Petition Date.

The Debtor admitted during his testimony that it was not true or accurate to say he was unemployed as of the Petition Date. The Debtor also testified that he discussed the inaccurate representation about employment on Schedule I with his attorney, Gleb Glinka, before the Debtor signed the petition. However, Attorney Glinka did not recall one way or the other whether the Debtor did in fact raise this point with him. Counsel testified that he would not have advised the Debtor to indicate on bankruptcy schedules that the Debtor was unemployed if he knew that the Debtor was employed as of the Petition Date. However, Attorney Glinka also indicated that he did not perceive it to be particularly material to the administration of the Debtor's bankruptcy estate that the Debtor misstated his employment status if the misstatement merely understated the term of employment by one day. All of this is speculative, though, since Attorney Glinka does not recall whether the Debtor specifically informed him of the effective date of his unemployment prior to the Petition Date, and does not have any recollection of whether he gave the Debtor any advice about how to categorize his employment status in the petition. Therefore, the testimony of Attorney Glinka neither supported nor contradicted the Debtor's testimony that he described himself as unemployed upon advice of his attorney.

2

Although the Debtor testified that he did not work for Redstone after September 17, 2004, the record reflects that, on September 23, 2004, Redstone paid the Debtor his full bi-weekly salary in the gross amount of $1,730.77 for the pay period of September 10, 2004 to September 23, 2004. On September 23, 2004, Redstone also issued the Debtor two other checks for the period of September 10, 2004 to September 23, 2004: one in the gross amount of $2,596.16, with the notation of "sevrnce" [sic], and one in the gross amount of $2,076.96, with the notation of "vacation." The Debtor's schedules do not disclose any expected severance pay, vacation pay or additional salary from Redstone. Approximately one year after the Petition Date, the Debtor did amend his schedules to include the severance pay, vacation pay and additional post-termination salary he received from Redstone.

The Debtor testified that as soon as he learned that he would no longer be employed by Redstone he contacted a former colleague at Pizzagalli to inquire as to whether that firm had any positions open. The record reflects that he e-mailed his resume to the Pizzagalli firm on Sunday, September 19, 2004, at 8:35 P.M. This evidence raised an issue of credibility because the Debtor also testified that he did not return to his Redstone office after September 17, 2004. Since the Debtor sent his resume via e-mail from his Redstone account at 8:35 P.M. two days after this date, and did not have remote access to his Redstone account, the Debtor had to have been physically in his office at Redstone when he sent this e-mail. The Debtor could not explain how the e-mail could have otherwise been sent. Therefore, the Court does not find the Debtor's testimony that he did not enter Redstone after September 17th to be credible. Likewise, the Debtor could not explain why Redstone paid him for the entire pay period through September 23, 2004, when he purportedly was not employed by Redstone after September 17th. The record is clear that the Debtor began work for Pizzagalli in early October 2004 and the Debtor's salary increased when he joined Pizzagalli. Even if the Debtor could be characterized as having been unemployed at some point, his unemployment was very short lived, soon after the Petition Date the Debtor knew he would be re-employed, at a higher salary, and he was not unemployed as of the Petition Date.

## DISCUSSION

A discharge under the Bankruptcy Code is intended to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. See generally, Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549 (1915); see also, In re Garman, 643 F.2d 1252, 1257 (7th Cir. 1980), cert. denied, 450 U.S. 910 (1981), In re Mick, 2003 WL 22247169 (Bankr. Vt. 2003), aff'd, 310 BR 255, (D. Vt. 2004). There is simply no question that the extraordinary relief afforded by the Bankruptcy Code is intended to be available only to the honest debtor. In re Maynard, 269 B.R. 535, 539 (D. Vt. 2001).

The purpose of §727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that each debtor provides reliable information to those who have an interest in the administration of the estate. In re Carlson, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999), aff'd, 250 B.R. 366 (N.D. Ill. 200), aff'd, 263 F.3d 748 (7th Cir. 2001). In order to prevail under §727(a)(4), a plaintiff must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive, and (5) the statement related materially to the bankruptcy case. In re Bailey, 147 B.R. 157, 163 (Bankr. N. D. Ill. 1992). A debtor's petition and schedules constitute a statement under oath for purposes of a discharge objection under §727(a)(4). In re Gannon, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994). The Debtor admits that the statement on his Schedule I that he was unemployed as of the Petition Date is a false statement. The Debtor also admits that he realized the statement was false prior to the filing of his petition. However, the Debtor claims that he had no intent to deceive when he made this statement

This Court has held that fraudulent intent can be inferred through circumstantial evidence and a course of conduct. In re Mick, 2003 WL 22247169, *7 (Bankr. D. Vt. 2003), aff'd, 310 B.R. 255 (D. Vt. 2004). Under §727(a)(4), "a reckless indifference to the truth is sufficient to sustain an action for fraud." In re Dubrosky, 244 B.R. 560, 572 (E.D.N.Y. 2000); see also, In re Diorio, 407 F.2d 1330, 1331 (2d Cir. 1969) ("successful administration of the Bankruptcy Act hangs heavily on the veracity of the statements made by the [debtor]…[R]eckless indifference to the truth…is the equivalent of fraud."). The Debtor made numerous misstatements on his schedules, most importantly, his representation that he was unemployed as of the Petition Date and his failure to disclose the anticipated severance package and other post-termination income. Although the Debtor ultimately amended his schedules to correct most of the misstatements (e.g., to increase the value of certain personal property and disclose the post-termination income), the Debtor never amended the statement on Schedule I that he was unemployed as of the Petition Date. The failure to amend this false statement supports the Plaintiffs' position that the Debtor exhibited a reckless disregard for the truth in the preparation of his Schedule I and throughout his bankruptcy case. See In re Mitchell, 102 Fed. App 860, 862-3 (5th Cir. 2004).

Next, the Court must determine whether the misstatement was material. The Debtor contends that even though the indication that the Debtor was unemployed was not true, "[t]he statement did not materially impact the bankruptcy case where the statement would have been accurate the following day." As to materiality, courts consider a statement to be material "if it is pertinent to the discovery of assets." In re Brenes, 261 B.R. 322, 334 (Bankr. D. Conn. 2001); see also, Katz v. Kurtaj (In re Kurtaj), 284 B.R. 528, 530 (Bankr. D. Conn. 2002). A material matter is "one bearing a relationship to the debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence of disposition of property." In re Sawyer, 130 B.R. 384, 394 (Bankr. E.D. N.Y. 1991). Once a creditor

4

meets its burden of proof by producing persuasive evidence of a false statement, the burden of production shifts to the debtor "to come forward with some credible explanation" for the false statement in his schedules.  In re Brenes, 261 B.R. at 334).

The Debtor claims that the false statement is not material because he was unemployed the day following the Petition Date.  However, the Court finds the Debtor's testimony regarding his last date of work of September 17, 2004 lacks credibility.  The Debtor's employment status is clearly pertinent to the discovery of assets, especially here where the Debtor was in fact nearly continuously employed from the Petition Date through the date of the hearing. Further, the Debtor's mischaracterization of his employment status deprived the United States Trustee's Office an opportunity to conduct a meaningful §707 analysis.  Under the facts and circumstances presented, the Court finds the Debtor's statement that he was unemployed as of the Petition Date to be a material misstatement.

While the Debtor did in fact undervalue certain property, namely, rifles, a shotgun and pistol listed on his schedules, the Court finds that, although indicative of the Debtor's overall reckless disregard for the truth, the differential between actual value (or even the value shown on the amended schedules) and the values listed when the petition was filed was not egregious.  In light of the Court's other findings, the Court need not decide whether the undervaluation of this personal property is sufficient to deny the Debtor's discharge under §727(a).

## CONCLUSION

The Court finds that the Plaintiffs have sustained their burden of proof and that the Debtor's testimony in defense of his conduct was not credible.  In particular, the Court finds that the Debtor's failure to disclose his actual employment status as of the Petition Date constitutes a knowing and fraudulent failure to disclose a fact that is material to the Debtor's bankruptcy case.  Therefore, the Court grants judgment in favor of the Plaintiffs and denies the Debtor a discharge under § 727.

This constitutes the Court's findings of fact and conclusions of law.

June 29, 2006  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

5